Good morning. We have two appeals that are scheduled for argument this morning. The first is Irish Jenkins v. Koch Foods, Inc. Charles Guerriere is here for the appellant. Jenkins, Rachel Borlada, and Marian Walker are here for the appellees. Mr. Guerriere, you may begin. Thank you. My name is Charles Guerriere. I'm here on behalf of Irish Jenkins. With me at the council table is Co-Counsel Heather Leonard. Forty years ago, forty-one years ago actually, the Eleventh Circuit recognized that all employees are entitled to a workplace that's free of sexual or racial harassment. In Hansen v. City of Dundee, the court famously said that no person, no man or woman, should be required to run a gauntlet of sexual abuse in order for the privilege to make a living and work at a job. Did Mr. Jenkins, in his deposition, say that all of the sex was consensual? No. He said there was a consensual relationship, but it's very clear from his testimony the first event was not consensual. That was when Ms. McDickinson lured him into a locked cage under the pretext of needing some files, locked the door behind them, and that's when she, according to Mr. Jenkins, she knelt down, unzipped his pants, and performed oral sex on him. And that's when his explanation, when asked why didn't he stop her, he said, one, no way. Of course, Mr. Jenkins is African-American and Ms. McDickinson is white. No way, as an ex-felon, am I going to put my hands on a white woman. No way, I'll go back to jail. No, I just put up with it and figured she got me, man, I've got no choice. And his testimony consistently was, yes, there was consensual sex after that, but that it was not welcome. And that's really the issue, I think, that's central around this case. Going to whether or not it was welcome, was that the incident that he testified he enjoyed? Well, he said, I don't think he testified he enjoyed that first event. I think he was stunned. The problem that I think happened in the district court is the district court equated an erection and an ejaculation as enjoyment. I'm not talking about that. I thought he testified that he enjoyed one of the incidents, but it wasn't entirely clear to me if it was that one. Remember, she was hooking up with him, stalking him, if you will, meeting him at bars, and then going out, taking him out into the car and performing oral sex on him. And he said he enjoyed that. But whether, trying to think of an example, let me say, I consented to come here this morning. That doesn't mean I necessarily welcomed it. I always enjoy it. So he was in a situation, he felt he had no choice. Well, there's got to be more. There's more to the equation, though. And the district court says, further, there's no evidence that McDickinson ever conditioned their relationship with threats, and Jenkins never reported or complained to anyone during a month's long affair. Is that anything erroneous about that statement in the order entered by the district court? Well, Did he ever complain? Did he ever complain or report it to anybody at all? He never reported it at all during the time that it was going on. There's no evidence of that in this record. No, no evidence of that in this record. But that, of course, is exactly the situation that the Supreme Court had in Vinson, where Ms. Vinson enters into a voluntary, consensual sexual relationship with her supervisor. It goes on for many years, breaks it off, and then she complains of sexual harassment. And the Supreme Court there said, it's not a question of he was my supervisor. I feared for my job. That's exactly the same testimony that Mr. Jenkins has given here. He's an ex-felon who got this job, lucky to get this job as an ex-felon. Many employers still in the state will not hire you if you've got a felony conviction. He was blessed to have the job, and he was feared if he did anything, no one would believe him and he would lose this job. So is it your position that all of the sexual encounters were not welcome? Absolutely. They were not welcome. And indeed, there are a number of cases that involve similar, let's say, consensual situations where not only is it the victims are voluntarily, if you will, engaging in it, some where the victims, one, go to the home for Christmas, invite that stuff. That still doesn't mean it's welcome. And a lot has to do with the relationship between the supervisor and an employer. In fact, the district court says at one point, but for the victim... Our cases also say that it has to be severe and pervasive. Right. So you're more pervasive, Your Honor. Yeah. So in this record, they had sex, what, ten times? How many times does the record reflect? The DC estimates approximately ten times. Over a period of how long? About a year and a half. And so the district court said, well, also, that's not severe or pervasive. And I think that misunderstands... No one goes to work expecting to have to have sex with their supervisor. And it's not like, oh, this is occurring outside the workplace. She's calling him to her office and then saying, you're going to have sex with me. Ultimately, she's the director of human resources at this facility. At one point, she calls him to her office where the director of the complex HR director, her supervisor, is there. And then she says, now Mr. Birchfield wants to watch while we have sex. Will you do that? That's pretty severe. You should not be asked at work by your supervisor, will you have sex with me while somebody else watches? That's severe. And for that to happen more than one occasion, meanwhile, she's stalking him. She's getting other employees to try and contact him to lure him to a bar where she can hook up with him. And being pervasive doesn't mean it has to happen every day. And there's no absolute number of what's pervasive. He's always there. All right. And let's move to the race discrimination claim. Is there any evidence in the record that either Ms. McDickinson or Mr. Birchfield was involved in the decision to terminate him? Yes. The evidence is disputed, I think, as to who made the decision. Give me a second here. Well, the judge says it was Bobby Cotton and Laura Cortez. And they made that decision alone based on his absenteeism. And there's that. I guess what I'm asking is, can you point me to any evidence in the record that McDickinson or Birchfield were involved in that decision? Well, the blue brief at 32 to 34 discusses some of that. Our gray brief at 13 discusses that. One of the more telling is Ms. Cortez's testimony when asked about it. She says the decision was made to terminate him. She speaks in the passive voice. She never really says who made the decision. There's testimony that Mr. Shaw gets the call from Birchfield and says, get Jenkins, take him to Cortez because he's not at his workstation. Yeah, but there's no, I mean, McDickinson and Birchfield, there's nothing in the record, nothing in the record that they participated in that decision. I mean, that's what I'm trying to. Right. Cortez says that she called McDickinson and was speaking to McDickinson about this situation when he was terminated and, quote, the decision was made to suspend him. Now, Cortez works for McDickinson. Cortez doesn't have the authority to terminate anyone. The only person who's got the authority according to the records is the head of HR at that facility or the complex HR manager, and that's Mr. Birchfield. Wait a minute now. Hold on. Bobby Cotton is the person who made the decision to terminate him, right? I don't think there's any testimony that Bobby Cotton says I made the decision to terminate him. He wanted him terminated, but he doesn't have the authority to do that. Who made the decision then? They never identified. Cook Foods has never said who made the ultimate decision. And what's clear is, since individuals are not liable under Title VII, Cook Foods of Alabama made the decision, they terminated him. And it's this collective decision that is being reached with McDickinson involved. McDickinson is pulling up the videos to show whether he's at the workplace. Steve Jackson testifies that Mr. Birchfield called him and said, I want you to watch Irish Jenkins looking for something. Birchfield's called to Shaw and says, I've gotten a complaint. It doesn't even say who made the complaint. And Mr. Birchfield's at a totally other facility. How did he know that Mr. Jenkins is not at his workstation? He's at a different location. So who's calling him to tell him that, and why are they calling him instead of Ms. McDickinson? Before you sit down, let me ask you about your assault and battery claim. You're right that the Supreme Court's decision in meritor saving says we don't consider whether the conduct was voluntary in the sexual harassment context. But wouldn't that be a proper question to ask for the assault and battery claim? It would be. And as we say in our, I think, our opening briefs, the district court looked at the assault and battery claims and consolidated them all together, the ten events, if you will, to one. And that under Alabama law, it is not a collective court. You have to look at each incident separately. And that, let's assume, some of the later events were welcome and consensual. We're not conceding that. If that's the case, there's still the question as to the first rape that occurred in the cage, whether that was assault and battery. He didn't invite it. It was unwelcome. He was trapped. So are you making a claim with respect to the other incidents or just that one when it comes to assault and battery? I didn't make a claim as to all of them because we'd have to go to the circumstances as to every one of the claims. The district court aggregated them and we believe improperly aggregated them. Have you identified which ones the claim would apply to? No, I believe not at this point. Thank you. Thank you, counsel. Ms. Barlotta. May it please the court. My name is Rachel Barlotta. I represent Cook Foods of Alabama LLC and Cook Foods, Inc. The only claim that's before the court at this point in time is the sex discrimination tangible employment action claim. Hostile work environment was waived at the district court level. The district court found that that claim had been abandoned and that was not challenged on appeal by the plaintiff. The hostile work environment claim based upon race was also waived. There was no argument made at the district court level that Mr. Jenkins was subjected to a hostile work environment based upon his race. In fact, that phrase appears nowhere in the plaintiff's summary judgment brief, hostile work environment based upon race. And he makes new arguments on appeal that he was subjected to hostile work environment including that the conduct was racial and that it was severe and pervasive. Those arguments were not made to the district court. Third, the tort claims have also been waived on appeal. Plaintiff devotes all of 12 lines in his initial brief to four separate claims. There is no citation to any authority, not to a single Alabama case addressing that. In a cursory manner, perfunctory manner, the plaintiff simply said that those claims, the district court's judgment on those claims was due to be reversed because the court had conditioned the ruling on the issue of welcomeness, but that is incorrect. The district court talked about how the plaintiff had failed to show other aspects of those claims, including mental suffering, that he would need to show to establish an issue of fact on invasion of privacy and outrage, for example. That was not addressed on appeal and therefore those arguments have been waived. Turning to the claim, the only claim that is properly before this court, which is tangible employment action based upon sexual harassment. Cook Foods respectfully requests that this court affirm summary judgment in its favor. To reverse that ruling, this court would have to find that an employer can be held liable for conduct, which the plaintiff testified that he enjoyed. Based upon a relationship, which he testified was open quote, indeed consensual, close quote, and based upon conduct, which the plaintiff actively tried to conceal from his supervisors and went as far as to deny when questioned about whether or not there was any sort of relationship. And the district court properly applied the test in Benson with respect to the welcomeness. The district court looked at consent as being one factor, but looked at the whole totality of circumstances, which is what the Supreme Court said in Benson that a district court should do. Look at the totality of the circumstances of the plaintiff's conduct at the time. And in so doing, the district court noted that as one of those factors that the plaintiff admitted that it was a consensual relationship, not just that the acts were consensual, that they weren't physically forced, but the entire relationship was consensual, that he enjoyed Ms. McDickinson's advances, that he participated in the advances under no threat from Ms. McDickinson, that he proactively met her all over town, not just at the workplace, but at bars, at people's apartments, in parking lots, at gas stations. When questioned, Mr. Jenkins, why he went, go get in Ms. McDickinson's car, when he knew that she was going to touch him, he said, well, because we were messing around. Well, he put a reasonable jury, determined that he didn't want to lose his job. He didn't want to go back to jail. He felt compelled, so therefore, even though he may have enjoyed it, he felt compelled to participate in this relationship. That constitutes a hostile work environment. Could a reasonable jury make that determination? Well, no. A reasonable jury couldn't make that determination of these facts because, as the district court noted, the plaintiff didn't feel always pressured to accept Ms. McDickinson's request. In fact, in one of his declarations, he testified that he, at different times, rejected her request for sexual intercourse. He also rejected leaving her girlfriend and testified on page 132 of his deposition, when I asked him, so you weren't afraid to lose your job when she asked you to leave your girlfriend? He said, I wasn't afraid. So, under this record and the plaintiff's testimony in this case, there's no way a reasonable jury could come to the conclusion that the plaintiff felt compelled to carry on a relationship with Ms. McDickinson. But again, consent is just one factor. It's not just that he consented. He enjoyed it. That's what he testified to, that he enjoyed the advances. He received sexual satisfaction from them. What's your response to the argument that the first incident was not consensual, that that was forced, at least? Well, there's no testimony to that, to support that. What Mr. Jenkins testified to was that when Ms. McDickinson approached him. Well, first of all, I will say this. It depends on which version of Mr. Jenkins' testimony that you want to believe, because he has put that initial encounter in his affidavit as being at a bar, off company property. He testified at different points in his deposition that the first sexual encounter was on company premises, but assuming that that is the version that somebody, the jury, would choose to adopt of his testimony, what he said was that Ms. McDickinson approached him, and his response to her was that when she started to perform oral sex on him, you're wild, and what if we get caught? And that is when she showed him that she had the keys. There was no testimony that he couldn't leave because he was locked into that particular area. And when I asked him why he, was there anything physically stopping him from turning around, he first said that he didn't want to answer that question. And then I pressed him again, and he ultimately was forced to admit there was nothing that would have prevented him from turning around and walking away from Ms. McDickinson. So if you look at his testimony, there is no evidence that at the time that that encounter happened, that it was not consensual. But even if this court were to say that there was some sort of issue of fact as to whether or not the conduct wasn't welcome, he still has to show that that harassment culminated in his termination, which as this court has noted during Mr. Greer's argument, there's no evidence in the record that Ms. McDickinson was involved in the termination decision. Mr. Jenkins testified that she did not, she being Ms. McDickinson, did not terminate him. Ms. McDickinson testified that she did not terminate him. So there's no way to tie the link of the harassment to Ms. McDickinson. On top of that, the problem of a tangible employment action case is that I'm terminated because I rejected my supervisor's advances. Mr. Greer says there isn't anything in the record to reflect who the decision maker actually was. That's incorrect. Mr. Birchfield testified that the decision maker was Bobby Cotton or whoever the plant manager was at the time, which was Bobby Cotton, as well as Laura Cortez testified that when I asked her, I said, did you tell the EEOC investigator that Bobby Cotton was the one who made the decision? She said, yes, I probably did. Well, I said, why did you do that? She said, because Bobby Cotton wanted Irish Jenkins gone. Did you take his deposition? Bobby Cotton. Was he deposed at all? He was not deposed. So we don't know what he would say about it? No, Your Honor. But the testimony, the record that we have, the testimony from Mr. Birchfield is that Mr. Cotton was the decision maker as well as the testimony from Laura Cortez. And we also know that the incident that led to the termination was not precipitated by Mr. Birchfield or Ms. McDickinson. Mr. Shaw, the direct supervisor of Mr. Jenkins, testified that he caught him smoking off the clock. He made the decision to escort him to the HR office for disciplinary action. Ms. Cortez testified she made the decision to suspend him. So we also have evidence that all the precipitating events that ultimately led to the termination, there was no involvement from Mr. Birchfield or Ms. McDickinson. But even if this court were to assume that there were some evidence that Ms. McDickinson had been involved in there, that still does not get the plaintiff over the hurdle of the causation. And here's why. Mr. Jenkins testified that the relationship with Ms. McDickinson, as far as he knew, could have lasted all the way up through the last day of his employment. So there was no testimony of, well, I rejected her advances and then I terminated her, which is something the district court noted in his opinion, that he could not establish that causal link because, as far as we know, the relationship went on until the last day of his employment. And that's what Mr. Jenkins testified when I asked him, well, how did the relationship end? What stopped it? He said, well, I got fired. That was the only thing that stopped the relationship. So there is not that causal connection that any sort of interactions between he and Ms. McDickinson led to or culminated in his termination. And briefly turning to the hostile work environment, there is an absolute dearth of evidence in this case that there was any sort of racial conduct or racial harassment. The only thing that's cited in the brief and in the entire record is that Ms. McDickinson made a single comment to Mr. Jenkins about black men. And he testified that at no time did any of the conduct from Ms. McDickinson or any of these comments ever interfere with his job performance. His testimony that was he always did his job to perfection. And I believe I'm into my co-counsel's time, so I'm going to yield. Thank you, Counsel. Ms. Walker. My name is Marion Walker and I represent Melissa McDickinson. There are three bases to her argument here. Number one is there has been waiver of the argument of the question of welcomeness, both at the district court level and the appellate level. Secondly, the consensual and welcome sex is clear in the record. And thirdly, invasion of privacy and outrage do not turn on whether or not there was consensual or welcome sex. And the district court made plain in talking about the elements of those towards. You say that the sex was consensual. I thought Ms. McDickinson's position is that there was no sex. That is her position, Your Honor, but we're taking the testimony of Mr. Jenkins as the truth to evaluate the summary judgment and we're not even bringing in her testimony at all. So looking at just the record of what he testified to, he never once confronted in the summary judgment or in the district court, I'm sorry, the appellate court brief any of these actions that McDickinson pointed out he testified to as being consensual. Only in a reply does he say, well, at least the first action should be considered consensual. That's waiver. And he hasn't even addressed that in this argument today. But we contend that the district court acknowledged this. When the court said in document 222, Jenkins failed to grapple with his own testimony. And he did that on appeal as well. And his hair is running long as though he doesn't have to. And we're left in the position of following up to say, well, if you're not going to talk about our issues, what are you going to talk about? Well, what he says now in reply is, well, we're going to talk about this one event. Well, in doing so, he doesn't parse out the event. Today he says he's locked in the cage. That's not in the record. That is nowhere in the record. And so what we have is a consistent refusal by Mr. Jenkins to confront the evidence not only that McDickinson points to that he provided, but also what the district court relied on in our favor on summary judgment. So we say that there was a waiver. We cite to the court the unpublished case of Hodge v. Wachovia Bank, which relied on Hamilton v. Southland Christian. So the passing reference in their brief, both at summary judgment and appellate court, does not preserve his claim that he can now talk about welcomeness or not. Indeed, when we look at the state torts, Mr. Jenkins spent one paragraph making reference to the state torts. He didn't recite any elements. He didn't contest the district court citation of those elements in making a finding that a consensual relationship was inconsistent with those state court elements. In doing so, he waived that argument. Now, assuming this court decides he has not waived that argument, we point to, number one, with respect to invasion of privacy. The Phillips case, the Johnson case, both out of Alabama that we have cited to as well as Busbee, require extensive inquiries into the private and personal life of Mr. Jenkins by Ms. McDickinson. There was no testimony at all about that. He was asked not just how did she violate your privacy. He was asked specifically, was there any discussion of your private lives? Was there any inquiry into your sexual life? No. That's what the case law requires. Not once has Mr. Jenkins addressed that. Mr. Jenkins did not show he experienced any of the states of consciousness that an invasion of privacy requires. Alabama law requires him to show that his experience was extreme, that it was outrageous, that it was coercive sexual demands. Now, whether it's considered consensual or not, there's no evidence of coercive sexual demands at all. And Jenkins hasn't claimed it, not once, in any brief that he's filed, not even in oral argument today. So, without the extensive and egregious inquiries into his sex life and his private life, invasion of privacy must fail. Likewise, outrage fails. And it's a question of fact, I mean, I'm sorry, a question of law, if the court please, as to whether or not the plaintiff has met the requirements of outrageousness to determine if that claim can proceed. Of course, the district court found he had not, based on the finding of consensual sex. But even if, and we pointed out in our appellate brief, even if the consensual aspects of the relationship is not relied upon, he still has not pointed out that he has suffered this extreme and outrageous actions that are so intolerable as not to be endured in this society.  Thank you, counsel. Mr. Guerrero, you reserve some time for rebuttal. Yes, I have, Your Honor. First, with regard to Cook Foods' argument about him enjoying it, him not complaining, because this involves a tangible employment action, the Farragher-Ellerith affirmative defenses that would require him to report it are not applicable. So whether he reported it or not, that is not a defense where there's a tangible employment action, which, of course, is what we're arguing here. Further, with regard to the welcomeness issue and the consent, Cook Foods' primary argument, I believe, is that Mr. Jenkins did not respond as he should have, as if there's some objective standard that all victims of sexual harassment should act once it happens. And that's not the standard. The standard is the reasonable person standard, whether he acted reasonably. And that standard should look at a person with the same characteristics and situation as Mr. Jenkins. And what would be reasonable for him to do might be very different from what each one of us might do if we were in that situation. And we would contend that his background and circumstances explain exactly why he reacted as he did. As he said concerning the first event, again, he wouldn't put his hands on her for fear of going back to jail. And that is a reasonable response. I mean, we sit here five blocks from a museum dedicated to the victims of lynching. That might not be my historic cultural background. It's maybe Mr. Jenkins' background, and his reaction in fear could be quite reasonable. He also testified, though, every time he had sex, he just wanted to get everything over with. He said he tried to end it once or twice because it posed a risk to his job. And the fact that when asked to leave his fiancée for Ms. McDickinson, he said no, he could reject that, doesn't mean he felt confident rejecting every single advance. He did not. And so that issue of welcomeness remains. As to the race aspect, the only evidence really about race is Ms. McDickinson's words to both Mr. Jenkins and Mr. Fuller, who is another individual here, who she approached both of them and made it clear she found black men attractive sexually. And that one of the factors that led to the sexual harassment of him was his race, that under the but-for test, but for his race, he would not have been targeted. I think we have your argument, Your Honor. Thank you, Your Honor.